UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN TROFIMUK,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:12-cv-2482-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 29, 2009, the date plaintiff filed his application, through the date of the final administrative decision.  (ECF No. 16.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 17.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 18.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 10.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on June 10, 1957, has a tenth grade education, and has no work history.[2]  (Administrative Transcript ("AT") 31-32, 129, 136.)  On May 29, 2009, plaintiff applied for SSI, alleging an onset date of March 1, 1995.  (AT 105-13.)  Plaintiff primarily complained of scoliosis and back pain that had resulted from a childhood back injury, as well as anxiety, kidney problems, and hip and leg pain. (AT 32-42, 136.)  Plaintiff claimed that he "cannot do any physical activities," that his "whole body is twisted," and that he is in constant pain.  (AT 136.)  On July 29, 2009, the Commissioner determined that plaintiff was not disabled.  (AT 48.)  Upon plaintiff's request for reconsideration, the determination was affirmed on March 30, 2010.  (AT 61.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on October 12, 2010, and at which plaintiff (represented by counsel) testified.  (AT 27-42.)

In a decision dated February 4, 2011, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from May 29, 2009, the date that his SSI application was filed, through the date of the ALJ's decision.  (AT 11-18.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 23, 2012.  (AT 1.)  Thereafter, plaintiff filed this action in federal district court on September 30, 2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff raises the following three issues:  (1) whether the ALJ improperly addressed plaintiff's mental impairments; (2) whether the ALJ improperly declined to apply a prior favorable disability determination; and (3) whether the ALJ erred in assessing plaintiff's residual

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

functional capacity ("RFC").

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

engaged in substantial gainful activity since May 29, 2009, the date plaintiff applied for SSI.  (AT 13.)  At step two, the ALJ determined that plaintiff had the following severe impairments: "thoracic scoliosis and a history of thoracic strain."  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 14.)

Before proceeding to step four, the ALJ assessed that plaintiff had the RFC "to perform the full range of medium work as defined in 20 C.F.R. 416.967(c)."  (Id.)  At step four, the ALJ found that plaintiff had no past relevant work experience.  (AT 17.)  Finally, at step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that plaintiff could perform.  (Id.)  Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in the Act from May 29, 2009, through the date of the ALJ's decision.

        B.        Plaintiff's Substantive Challenges to the Commissioner's Determinations

                1.  Whether the ALJ Improperly Addressed Plaintiff's Mental Impairments

Plaintiff makes two arguments regarding the ALJ's determinations concerning plaintiff's mental impairments.  First, plaintiff argues that the ALJ improperly determined that plaintiff's mental impairments were non-severe at step two.  In finding plaintiff's mental impairments to be non-severe, the ALJ noted that plaintiff "indicated that medication controls [his] anxiety and depression related symptoms" and that plaintiff "has received scant treatment for mental health issues."  (AT 13.)  The ALJ also noted that plaintiff's "mental status examination was

---

> Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1 unremarkable" and that "his treating physician did not report depression and anxiety in a
2 submitted medical assessment form." (Id.)

3       Plaintiff contends that the fact that he was prescribed Zoloft, Paxil, Klonopin, and
4 Wellbutrin, and complained to his doctors about anxiety, insomnia, and depression shows that his
5 mental afflictions were not trivial or readily alleviated. However, "[i]mpairments that can be
6 controlled effectively with medication are not disabling for the purpose of considering eligibility
7 for SSI benefits." Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ
8 took into account the fact that plaintiff was taking medications for these mental impairments and
9 properly determined that the medical records and plaintiff's own statements regarding these
10 impairments indicated that they were effectively controlled. The record shows that the ALJ's
11 reasoning and overall determination was based on substantial evidence. (See AT 201-05 (noting
12 only physical health problems); 213 (noting plaintiff's allegations regarding his impairments,
13 none of which are mental in nature); 216 (making no note in the section regarding whether
14 plaintiff has any emotional or mental impairments). As the ALJ noted, even plaintiff's treating
15 physician, who gave the most severe assessment of plaintiff's ability to work, did not note that
16 plaintiff had any mental impairments that affected his ability to work. (See AT 216.)

17       Plaintiff further asserts that the fact that plaintiff testified during his hearing with the ALJ
18 that "sometimes the medication kind[] of kills those feelings and then it's coming back again,"
19 shows that the ALJ's reasoning that plaintiff "indicated that medication controls" his mental
20 impairments is unsupported by the record. However, the rest of the record reveals that the ALJ's
21 reasoning on this point was supported by substantial evidence. Prior to his hearing with the ALJ,
22 plaintiff stated that he was not filing his SSI claim on the basis of anxiety or depression and that
23 his medications controlled those conditions. (AT 147, 201.) Furthermore, even during the
24 hearing plaintiff stated that his medications help control these conditions and did not mention that
25 these conditions affected his ability to work. (AT 37, 40.) Moreover, the ALJ gave additional
26 reasons for why she determined plaintiff's mental impairments to be non-severe that, for the
27 reasons stated above, were based on substantial evidence from the record. Accordingly,
28 plaintiff's argument that the ALJ erred in not finding plaintiff's alleged mental impairments to be

5

1 "severe" at step two of the analysis is without merit.

2 Second, plaintiff argues that, regardless of whether the ALJ properly determined plaintiff's medical impairments to be non-severe, the ALJ's failure to account for plaintiff's mental impairments in the RFC assessment cannot be harmless error because "the decision doesn't tell us what the effect of these mental impairments is, so we don't know whether they necessitated vocational input [at step five]." (ECF No. 16 at 6.) As plaintiff points out in his reply briefing, the Commissioner does not address this particular argument in her opposition brief.

9 The regulations provide, "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity." 20 C.F.R. § 416.945(a)(2). Here, the ALJ concluded at step two that plaintiff had the medically determinable mental impairments of anxiety and depression and also concluded that these impairments were non-severe. (AT 13-14.) However, the ALJ did not allude to these two impairments at any point within her discussion regarding plaintiff's RFC. Nevertheless, contrary to plaintiff's argument, the ALJ's failure to include the above mental limitations in her RFC assessment was harmless because the Ninth Circuit Court of Appeals has already held that moderate mental limitations do not even require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed. Id. at 1075. The Ninth Circuit Court of Appeals rejected this argument, holding that these moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a

vocational expert. Id. at 1077.

Here, the medical record shows that plaintiff's anxiety and depression were far less limiting on plaintiff's ability to work than the mental impairments suffered by the claimant in Hoopai. As stated above, plaintiff's medical records and own statements indicate that plaintiff's mental impairments were not severe enough to impact plaintiff's ability to do work beyond the exertional limitation. (See, e.g., AT 37, 40, 147, 201-05, 216.) At no point in the record is it indicated that plaintiff's ability to perform workplace functions of any kind were affected by his anxiety and depression. Because substantial evidence supports the ALJ's conclusion that plaintiff's anxiety and depression were not sufficiently severe non-exertional limitations that prohibited the ALJ's reliance on the grids without the assistance of a vocational expert, the ALJ's error in failing to discuss plaintiff's mental impairments when she assessed plaintiff's RFC was a harmless one.

### 2. Whether the ALJ Improperly Declined to Apply the Findings from a Prior Favorable Disability Determination

Plaintiff next contends that the ALJ erred by declining to adopt the findings of a prior disability determination that had been favorable to plaintiff. In rejecting plaintiff's argument that the prior favorable determination should be adopted, the ALJ stated:

> At the hearing, the claimant's representative argued that a prior favorable determination should be adopted and that the claimant should be reviewed for medical improvement. The claimant's benefits were previously terminated because he had excess resources, and, as a result, was not eligible for [SSI]. A prior determination cannot be adopted if the claimant's [SSI] benefits have been terminated. See POMS DI 11011.001.

(AT 11.) Plaintiff argues that principles of res judicata made certain findings from the earlier favorable decision binding on the ALJ, and that the ALJ's failure to consider those findings was in error. The Commissioner counters that res judicata does not apply because the prior favorable determination was terminated, thus prohibiting the ALJ from adopting the prior decision under the rule set out in the Social Security Administration's Program Operations Manual System

////

////

("POMS")[4] DI 11011.001.[5]  Plaintiff correctly points out in his reply briefing, however, that POMS DI 11011.001 addresses collateral estoppel, a different issue from the res judicata argument plaintiff asserts here.  Nevertheless, for the reasons stated below, plaintiff's argument that res judicata bound the ALJ to accept the findings from the prior determination lacks merit.

The Act directs that "[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing." 42 U.S.C. § 405(h); see 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1) (stating that res judicata applies where the Commissioner has made a previous final decision based "on the same facts and on the same issue or issues").  "For example, prior findings about an applicant's RFC, education, and work experience are entitled to some preclusive effect as long as the adjudicator does not consider new and material evidence on the issue."  Nursement v. Astrue, 477 F. App'x 453, 454 (9th Cir. 2012) (citing Chavez v. Bowen, 844 F.2d 691, 694 (9th Cir. 1988)); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing Chavez, 844 F.2d at 694) ("[A] previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge.").  "Medical evaluations conducted after a prior

---

[4] Although the POMS is not a product of formal rulemaking, the courts may treat it with deference to the degree that it is persuasive.  See Washington State Dep't of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385-86 (2003);  Newton v. Comm'r of Soc. Sec., 2009 WL 250603 at *1, n.2 (E.D. Cal. Feb. 2, 2009) (finding the POMS definition for a particular term to be the controlling definition).

[5] POMS DI 11011.001 states, in pertinent part:

> Based on the rules of Collateral Estoppel, a prior favorable determination or decision made by SSA or the court must be adopted for the same period on the new claim unless the prior favorable determination can be reopened under the rules of administrative finality.
>
> EXCEPTION: For disability claims, the prior favorable medical determination cannot be adopted if . . . the title XVI record is currently in terminated status.

POMS DI 11011.001 (2014), available at http://policy.ssa.gov/poms.nsf/lnx/0411011001 (as visited February 21, 2014).

adjudication necessarily constitute new and material evidence." Id. (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172-73 (9th Cir. 2008)).

Plaintiff argues that the holding in Chavez that principles of res judicata make a first judge's determination regarding a claimant's RFC binding on a subsequent determination should be applied to this case. However, as the Ninth Circuit Court of Appeals explained in Stubbs-Danielson, "[i]n Chavez, [the court] observed that principles of res judicata apply to administrative decisions regarding disability and impose an obligation on the claimant, in instances where a prior ALJ has made a finding of non-disability, to come forward with evidence of 'changed circumstances' in order to overcome a presumption of continuing non-disability." 539 F.3d at 1173. The court in Chavez did not address the situation presented by this case and Stubbs-Danielson where there is a previous favorable disability determination that was terminated prior to the challenged determination of non-disability. See Stubbs-Danielson, 539 F.3d at 1173 ("[Claimant] has cited no authority extending the principles of Chavez, which applied preclusive effect to a prior finding of non-disability, to the present context, an attempt to apply that same presumption to a prior finding of disability."). In Stubbs-Danielson, the court declined to require an ALJ to give preclusive effect to the findings of a prior favorable disability determination that had been terminated for non-medical reasons when the ALJ made her determination based entirely on medical evaluations conducted after the terminated disability determination because "[t]hese evaluations necessarily presented new and material information not presented to the first ALJ." 593 F.3d at 1173.

All of the medical evaluations considered by the ALJ in making her determination in the present case were conducted *after* the termination of the prior favorable determination. Therefore, the ALJ based her determination entirely on new and material evidence and was not required to give the findings from the prior adjudication preclusive effect.

Plaintiff also argues that, "[e]ven if Stubbs-Danielson's gravamen is accepted," the ALJ erred by not considering the medical opinions and other evidence presented during the prior adjudication because plaintiff's "scoliosis happens to be a longstanding impairment unlikely to improve with time." (Pl.'s Mot for Summ. J. at 6.) However, plaintiff fails to cite to any

9

authority to support this proposition and the Ninth Circuit Court of Appeals has previously declined to accept similar arguments. See Nursement, 477 F. App'x at 455 (declining to accept the claimant's argument that the ALJ erred by not considering an evaluation giving the claimant a low IQ score that had been presented during a previous administrative adjudication when the claimant asserted that this evidence showed that his mental capacity for work could not improve). Accordingly, the ALJ did not err in declining to give the prior disability determination's findings preclusive effect.

### 3. Whether the ALJ Erred in Assessing Plaintiff's RFC

Plaintiff makes two arguments for why the ALJ erred in assessing plaintiff's RFC. First, he argues that the ALJ failed to provide an independent function-by-function evaluation stating plaintiff's limitations. Second, plaintiff argues that the ALJ failed to properly weigh the medical evidence.

#### a. Whether the ALJ Failed to Properly Assess Plaintiff's RFC on a Function-by-Function Basis

An ALJ's RFC assessment must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling ("SSR") 96-8p.[6] The reason for this requirement is to ensure that, at step four of the analysis, the ALJ properly determines whether the claimant is capable of still performing his or her past work as he or she actually performed it. Id. The actual functional requirements of a claimant's prior job might not mirror the functional requirements stated under the relevant category of the Dictionary of Occupational Titles ("DOT"). For example, the claimant's prior job may have required the claimant to perform certain functions at a more strenuous level of exertion than what the DOT listing requires for

---

[6] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). While SSRs do not have the force of law, they are binding on ALJs and courts will "defer to [SSRs] unless they are plainly erroneous or inconsistent with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citing Bunnell, 947 F.2d at 346 n.3).

1 those particular functions.

2 Here, the ALJ did not explicitly discuss plaintiff's RFC on a function-by-function basis. Instead, the ALJ stated that plaintiff had the RFC "to perform the full range of medium work as defined in 20 CFR 416.967(c)."[7] While the ALJ did not explicitly lay out plaintiff's limitations, her citation to 20 CFR 416.967(c), which does state RFC on a function-by-function basis, was functionally equivalent to explaining plaintiff's limitations on a function-by-function basis. Furthermore, any error the ALJ made in stating plaintiff's RFC in these terms was harmless error. The ALJ had no need to determine whether the plaintiff was capable of performing his past work as he actually performed it because plaintiff had no work history. See SSR 96-8p. Accordingly, the main reason for SSR 96-8p's function-by-function requirement was not present in this case. See id. Therefore, plaintiff's argument is not well taken.

### b. Whether the ALJ Failed to Properly Weigh the Medical Evidence

Plaintiff next argues that the ALJ erred in giving only limited weight to the opinion of Dr. Rafanov, plaintiff's treating physician, while assigning great weight to the opinions of Dr. Siciarz, plaintiff's examining physician, and Dr. Chan and Dr. Tambellini, two non-examining physicians who reviewed plaintiff's medical records.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

---

[7] 20 CFR 416.967(c) states:

> Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

Id.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Rafanov examined plaintiff on April 9, 2010. Dr. Rafanov diagnosed plaintiff with severe thoraco-lumbar scoliosis and thoracic lumbar strain with an onset date of 1967. (AT 215.) Dr. Rafanov also found plaintiff's physical impairments to be chronic in nature. (AT 217.) He opined that during an eight-hour work day, plaintiff could: walk for two to four hours total and for less than one hour without interruption, stand for one to two hours total and for less than one hour without interruption, and sit for four to six hours total and one to two hours without interruption. (Id.) He further found that plaintiff could frequently carry objects less than five pounds, occasionally carry objects between five and ten pounds, and never carry objects over twenty pounds. (AT 216.) He also opined that plaintiff's physical impairments partially restricted him in climbing stairs and ladders, restricted him in his ability to bend, and restricted his ability to sit for a prolonged period of time, making him incapable of performing at least the full range of sedentary work. (Id.) Finally, Dr. Rafanov opined that plaintiff could not work five

1 days a week for eight hours a day due to the back pain caused by his impairments. (Id.)

2       The ALJ gave the following reasons for assigning limited weight to Dr. Rafanov's

3 opinion:

> Dr. Rafanov's statements are at odds with physical examinations and the claimant's reported activities. Dr. Rafanov also notes that these limitations have been present since 1967 but there is no indication Dr. Rafanov has treated the claimant for such a long duration. Since the opinion is without substantial support from the other evidence of record, the undersigned has given only limited weight to Dr. Rafanov's statements.

8 (AT 16-17.) Plaintiff asserts that the ALJ's three reasons for assigning limited weight to this

9 opinion are insufficient because they are not based on substantial evidence in the record. For the

10 reasons stated below, plaintiff's argument is without merit.

11       As the ALJ stated, Dr. Rafanov's statements concerning plaintiff's RFC "are at odds with

12 [the] other physical examinations" in the record. (AT 16.) In particular, Dr. Rafanov's opinion is

13 contradicted by the opinions of Dr. Siciarz, Dr. Tambellini, and Dr. Chan.

14       Dr. Siciarz examined plaintiff on July 9, 2009. During this examination, Dr. Siciarz

15 observed that plaintiff's movements were normal and that plaintiff did not need to use an assistive

16 device for ambulation, could sit comfortably, and was able to stand up from sitting and supine

17 positions without any difficulty. (AT 202-03.) Dr. Siciarz noted that plaintiff was sixty-four

18 inches in height and weighed 160 pounds. (AT 202.) He further noted that plaintiff had

19 thoracolumbar scoliosis and a deformity in his mid-chest wall, but that plaintiff had normal

20 respiration. (AT 203.) He also noted that plaintiff had right hand grip strength of 35/35/35

21 pounds and left hand grip strength of 40/40/45 pounds. (AT 202.) Dr. Siciarz opined that

22 plaintiff could push, pull, lift, and carry fifty pounds occasionally and twenty-five pounds

23 frequently, could stand and walk six hours of an eight hour day, could sit and climb without

24 restriction, and could frequently engage in postural activities such as crouching, bending, and

25 kneeling. (AT 204.)

26       Dr. Tambellini was a consulting physician who analyzed plaintiff's medical records on

27 July 21, 2009. He opined that plaintiff could occasionally lift and carry fifty pounds, could

28 frequently lift and carry twenty-five pounds, could stand or walk for about six hours in an eight-

hour workday, and could sit for about six hours in an eight-hour workday. (AT 207.) He also found that plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AT 208-09.) After reviewing plaintiff's records, Dr. Tambelini agreed with the RFC assessment made by Dr. Siciarz. (AT 210.)

Dr. Chan reviewed plaintiff's medical records on March 25, 2010, after plaintiff filed an application for reconsideration of his case and after plaintiff was examined by Dr. Rafanov. Dr. Chan noted the findings of Dr. Siciarz, Dr. Tambellini, and Dr. Rafanov. After reviewing plaintiff's examination records, Dr. Chan determined that there had not been a significant material change to plaintiff's physical condition since Dr. Siciarz's examination and concurred with Dr. Siciarz's initial assessment that plaintiff had a medium-range RFC. (AT 213.)

The fact that Dr. Siciarz conducted an independent examination of plaintiff and found plaintiff to be less physically limited than the contradictory opinion of Dr. Rafanov was, by itself, substantial evidence sufficient to support the ALJ's accordance of "limited weight" to Dr. Rafanov's opinion. See Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751). ("[W]here the opinion of Plaintiff's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence; it is solely the province of the ALJ to resolve the conflict."). Moreover, the ALJ's decision to give limited weight to Dr. Rafanov's opinion was further bolstered by the consultative opinions of Dr. Tambellini and Dr. Chan, which were in accordance with Dr. Siciarz's opinion. (See AT 201-14); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). In particular, Dr. Chan concurred with Dr. Siciarz's opinion even after taking Dr. Rafanov's contrary opinion into account. (See AT 213.) The ALJ was entitled to rely on these doctors' opinions as a reason for assigning a reduced weight to Dr. Rafanov's opinion.

Furthermore, the other evidence in the record, including plaintiff's own testimony, is more consistent with the opinions of Dr. Siciarz, Dr. Tambellini, and Dr. Chan than it is with Dr.

Rafanov's opinion.  See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  For instance, during the hearing, plaintiff testified that he could possibly walk up to two miles, even though he had never tried to do so, took his daughters to school nearly every other day, and was able to go out with his family to shop for groceries and other household items.  (AT 38-39.)  In addition, plaintiff testified that the pain caused by his physical impairment was a "five to six" on a ten-point scale when he was not using medication and "maybe [a] two" when he was on medication (AT 35), indicating that plaintiff's physical impairments were not as debilitating as Dr. Rafanov's assessment made them out to be.

For the above reasons, substantial evidence from the record supported the ALJ's decision to assign limited weight to Dr. Rafanov's opinion.[8]  Accordingly, plaintiff's argument that the ALJ erred in weighing the medical evidence as she did is without merit.

## V.    CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.

3. Judgment is entered for the Commissioner.

////

////

////

---

[8] The ALJ also discounted Dr. Rafanov's opinion because Dr. Rafanov found that plaintiff's physical limitations began in 1967 even though there was no evidence the Dr. Rafanov had a treatment relationship plaintiff that far back.  (AT 16.)  Plaintiff claims that this was an improper reason for assigning limited weight to Dr. Rafanov's opinion.  However, because the ALJ's other reasons for assigning limited weight to Dr. Rafanov's opinion were based on substantial evidence from the record, and, thus, sufficiently supported the ALJ's determination, the court need not address plaintiff's additional contention.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated: February 26, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE